UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

WILLIAM PARKER, et al.,[1]           )
                                     )
            Plaintiffs,              )
                                     )
v.                                   )        No. 2:18 CV 13 JMB
                                     )
CITY OF VANDALIA, MISSOURI, et al.,  )
                                     )
            Defendants.              )

## MEMORANDUM AND ORDER

Pending before the Court is Defendant Chase Waggoner's ("Waggoner") Motion for Summary Judgment.  (ECF No. 69)  Plaintiffs William Parker ("Parker") and William Jones ("Jones") (collectively "Plaintiffs") filed an opposition (ECF No. 84) and Waggoner filed a reply (ECF No. 94).  The motion is fully briefed and ready for disposition.  All matters are pending before the undersigned United States Magistrate Judge with the consent of the parties, pursuant to 28 U.S.C. § 636(c).  Based upon a review of the file, record and proceedings herein, and for the reasons stated, the Court grants Waggoner's motion for summary judgment.

According to the allegations in the Second Amended Complaint ("SAC") (ECF No. 41), Plaintiffs were police officers employed by Defendant City of Vandalia, Missouri ("Vandalia"), a fourth-class city located in Audrain County, Missouri.  (Id. at ¶¶ 4, 22-23)  Jones also served as

---

[1] On January 2, 2019, the Court dismissed the instant cause of action against Plaintiff Raymond Bumbales with prejudice (ECF No. 49).

interim police chief.  (Id. at ¶ 23)  At the time of the events giving rise to the instant action, Waggoner was the city administrator of Vandalia.[2]  (Id. at ¶ 5)

Plaintiffs assert claims against Waggoner in Counts IV and VI, and Parker asserts a claim against Wagoner in Count III.  In Count III, Parker argues that Waggoner discriminated and retaliated against him based on his national origin, in violation of the Missouri Human Rights Act ("MHRA").  (ECF No. 41, SAC at ¶¶ 132-34)  In Count IV, Plaintiffs allege a § 1983 claim, arguing that Waggoner violated their liberty interest and constitutional rights by terminating them, failed to protect their good names, and denied them due process by depriving them a meaningful opportunity to be heard at their termination hearing.  (Id. at ¶¶ 139-44).  In Count VI, Plaintiffs allege that Waggoner made false and defamatory statements about Plaintiffs.  (Id. at ¶¶ 158-63).

I.   **Factual Background**

The facts are taken from the SAC, Waggoner's Statement of Uncontroverted Facts (ECF No. 71), Plaintiffs' Response thereto and Additional Facts in Dispute (ECF No. 85), and Waggoner's Reply and Response to Plaintiffs' Statement of Additional Facts (ECF No. 95).  To resolve the motion for summary judgment, the Court has considered only those facts that are material and relevant, and the facts are viewed in the light most favorable to Plaintiffs, the nonmoving parties.

---

[2] Section 77.042 gives third and fourth class cities the option of providing by ordinance for the employment of a city administrator, "who shall have general superintending control of the administration and management of the government business, officers and employees of the city, subject to the direction and supervision of the mayor."  Mo. Rev. Stat. § 79.240.

Plaintiffs filed a Response to only one of the twenty-six paragraphs of Waggoner's Statements of Uncontroverted Facts.  See ¶ 13.[3]  Local Rule 4.01(E)[4] provides with respect to summary judgment motions:

> A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations.  Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine dispute exists.  Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies.  The opposing party also shall note for all the disputed facts the paragraph number from movant's listing of facts.  All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

E.D. Mo. L.R. 4.01(E).  As a result of Plaintiffs' failure to submit responses to ¶¶ 1-12 and 14-26, Plaintiffs have not met the requirements of Local Rule 4.01(E), and are deemed to have admitted the facts set forth in those paragraphs in Waggoner's statements of uncontroverted facts.  Turner v. Shinseki, 2010 WL 2555114, at *2 (E.D.Mo. June 22,

---

[3] In particular, Plaintiffs attempt to establish a genuine factual dispute regarding Waggoner's employment with Vandalia after March 1, 2017.  The Vandalia Board of Alderman Executive Session Notes for March 1, 2017, show that the Board voted unanimously to remove Waggoner as City Administrator, effective immediately.  (ECF No. 71-2)  Plaintiffs contend, however, that Waggoner's employment continued due to a severance package.  In this regard, Plaintiffs rely on Waggoner's deposition testimony concerning a four-month severance from Vandalia following his termination.  This contention does not establish a genuine issue of fact for purposes of this lawsuit.  Plaintiffs have not submitted any evidence or law in support of their assertion that Waggoner's severance evidences continued employment and Waggoner's employment contract is not before the Court as it was not submitted by either party.

[4] This local rule "exists to prevent a district court form engaging in the proverbial search for a needle in the haystack.  Courts have neither the duty not the time to investigate the record in search of an unidentified genuine issue of material fact to support a claim or a defense."  Libel v. Adventure Lands of America, Inc., 482 F.3d 1028, 1032 (8th Cir. 2007) (internal quotation and citation omitted).

2010)(citing <u>Deichmann v. Boeing Co.</u>, 36 F.Supp.2d 1166, 1168 (E.D.Mo. 1999), *aff'd* 232 F.3d 907 (8th Cir.  2000)), <u>cert. denied</u>, 531 U.S. 877 (2000).

Plaintiffs have attempted to create a genuine dispute of material facts by supplementing the record with a statement of twelve additional facts in dispute (ECF No. 85), most of those facts are controverted and one is admitted by Waggoner (ECF No. 95). Specifically, Local Rule 4.01(E) requires that the opposing party cite the paragraph number from the movant's listing of facts for all disputed facts.  E.D. Mo. L.R. 4.01(E).  Plaintiffs have not cited authority for submitting additional facts as opposition to a summary judgment motion nor has this Court's research found any authority.  Neither the Federal Rules of Civil Procedure, nor this Court's Local Rules, make any provision for the submission of additional facts by a party opposing a motion for summary judgment.  Here, the parties are in general agreement about the critical factual events, differing in how they characterize those events.

The Court will, however, addresses the parties' disagreements as to the Additional Facts in Dispute outlined in Plaintiffs' Response (ECF No. 85).  In ¶ 1, Plaintiffs assert that Waggoner knew about the filing of the EEOC complaints based on his comments about persons with Polish heritage.  Waggoner's deposition testimony cited in support of this assertion does not support this proffered fact.  With respect to ¶¶ 2-5 and 7-8, Plaintiffs purport to summarize documents in the record, including the January 22, 2017, EEOC complaint, the EEOC charge of discrimination received on January 24, 2017, the January 20, 2017, EEOC charge, lack of conciliation process during the administrative proceedings, and Vandalia's response to the charge of discrimination.  Plaintiffs' characterization of facts derived from these documents reflects Plaintiffs' subjective interpretation of the

4

documents.  The Court understands these documents speak for themselves.  With respect to ¶ 6,[5] the Court finds this fact is immaterial and is ineffective for purposes of establishing a genuine factual dispute.   In ¶ 9, Plaintiffs assert that Waggoner spoke to newspaper publications after leaving his employment with Vandalia, and they seek to use his quoted statements to support their defamation claim.  The Court finds that, because Plaintiffs failed to plead allegations in their SAC regarding Waggoner allegedly making defamatory statements about them in the April 2, 2017, Hannibal Courier-Post article, Plaintiffs cannot use this factual allegation to establish their defamation claim.  See Stone v. Harry, 364 F.3d 912, 914-15 (8th Cir. 2004) (federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint").  In ¶ 10, Plaintiffs assert that "Waggoner still believes the tickets were issued to make the dismissals look suspicious. "  (ECF No. 85)  Plaintiffs point to Waggoner's deposition in support of this assertion.  Waggoner's testimony, however, was not that stark.  Rather, when asked to speculate, Waggoner testified that it was "plausible" that the tickets were issued to make any subsequent termination look like retaliation instead of administrative.  (ECF No. 85-1 at 78)  Accordingly, this factual allegation is not fully supported by the record.  With respect to ¶ 11, Waggoner admits that he has no knowledge regarding whether Plaintiffs knew they were being dismissed at the time they issued the tickets.  In ¶ 12, Plaintiffs once again assert that Waggoner's employment with Vandalia continued after March 1, 2017, due to his receipt of a four-month severance package.  As

---

[5] In ¶ 6, Plaintiffs assert that MIRMA is defending and indemnifying Waggoner and Vandalia Defendants.

outlined in footnote 3 above, Plaintiffs' allegations in ¶ 12 do not create a genuine dispute of material fact precluding summary judgment.

With the foregoing in mind, the Court accepts the following facts as true for purposes of resolving the motion for summary judgment.  Waggoner served as the City Administrator for Vandalia from July 25, 2016, to March 1, 2017.  (ECF No. 41, SAC at ¶ 5; Exh. A, Depo. of Waggoner at 11, 13-14)  Plaintiffs were previously employed by Vandalia as police officers with the Vandalia Police Department.[6]  (SAC at ¶¶ 42-43)  At the time of his termination, Jones was Parker's supervisor.  (Id. at ¶ 72)

Parker is of Polish ancestry and heritage, and Waggoner "regularly told Polish jokes on numerous occasions" in front of Parker and other employees.  (Id. at ¶¶ 24, 25, 58)  Parker reported to his supervisors, including Jones, that Waggoner's conduct was offensive, derisive, and unprofessional and created a hostile work environment.  (Id. at ¶ 71)

On December 15, 2016, Jones had a meeting with Waggoner and Defendant Mayor Ralph Kuda ("Kuda") to discuss Waggoner's offensive conduct and informed them that Parker had filed a charge of discrimination with the EEOC.[7]  (Id. at ¶ 72)  During that meeting, Jones indicated that he also would be filing an EEOC claim out of fear of retribution by Vandalia, Waggoner, and some other defendants.  (Id. at ¶ 72)  On December 16, 2017, Waggoner started retaliating against

---

[6] The Missouri courts have established that fourth-class city police officers are governed by the appointive officer provision of § 79.240, Mo. Rev. Stat.  Section 79.240 assigns at-will status to appointive officers of the fourth-class cities, "the Missouri courts have consistently interpreted § 79.240 to include police officers as appointee officers…. [and] treated fourth-class city police officers as 'appointive officers' within the meaning of 79.240. "  Armer v. City of Salem, 861 F.2d 514, 515-16 (8th Cir. 1988) (citing Amaan v. City of Eureka, 615 S.W.2d 414 (Mo. banc 1981)).

[7] The undersigned notes that during his deposition, Waggoner testified that he was not aware of Parker's Polish heritage until he "was presented with the documentation in accordance with this legal action."  (Waggoner Depo. at 75)

Plaintiffs by changing their work shifts, denying Plaintiffs pay raises that other officers received, and replacing the locks on their office doors and not giving them the keys.  (Id. at ¶ 73)

On January 16, 2017, Waggoner and Defendant Chris Hammann ("Hammann") terminated Plaintiffs.  (Id. at ¶¶ 75-76)  On January 23, 2017, the Board of Alderman voted to rescind Plaintiffs' terminations and placed Plaintiffs on administrative suspension pending an investigation.  (Id. at ¶ 78)

On January 22, 2017, Parker submitted an EEOC intake questionnaire and complaint via facsimile with Waggoner identified as the person responsible for discriminating against him by giving him no pay raise and terminating him based on race, national origin, and retaliation and in response to "Name and Title of Person(s) Responsible:  City Administrator, Chase Waggoner. " (ECF No. 85-2)

On March 1, 2017, Plaintiffs were cleared of any wrongdoing pursuant to an initial investigation and were reinstated.  At the same meeting, the Board of Alderman also voted to place Plaintiffs on paid administrative leave pending a second investigation.  (Id. at ¶ 79, Exh. B, March 1, 2017 Board of Alderman Executive Session Notes)  During that same meeting, the Vandalia Board of Alderman removed Waggoner from his position as City Administrator, effective immediately.  (Exh. B, March 1, 2017 Board of Alderman Executive Session Notes)

On April 12, 2017, at the close of the second investigation, the Board of Alderman terminated Plaintiffs.  (SAC at ¶ 81)  Pursuant to Vandalia's policy, Plaintiffs requested a hearing to review their termination.  (Id. at ¶ 83)  During the hearing on June 20, 2017, Plaintiffs first learned of the grounds for their termination, including "allegations of falsified timecards and conduct detrimental to the [police] department. "  (Id. at ¶¶ 84-85)

On August 14, 2017, other named defendants caused felony charges to be initiated against Plaintiffs in Montgomery County, but the Montgomery County prosecutor dismissed the charges. (Id. at ¶¶ 88-89)

On August 25, 2017, the St. Louis Post Dispatch published an article concerning Plaintiffs' felony prosecutions in Montgomery County.  (Id. at ¶ 111)  In their SAC, Plaintiffs assert that their terminations and the filing of the felony charges against them have resulted in harm to their professional reputations and good names.  (Id. at ¶ 115)  Plaintiffs believe that Waggoner made defamatory statements "to Police Chief Chris Hammann, Mayor Ralph Kuda, Vandalia City Alderman (sic)" in "closed sessions of city council meetings."  (Exh. E, Response to Waggoner's Interrog. No. 14; Exh. F, Response to Waggoner's Interrog. No. 10)

On March 23, 2017, Parker filed a Charge of Discrimination against Vandalia and listed Vandalia as the only respondent with the Missouri Commission on Human Rights ("MCHR"), alleging claims of racial discrimination related to his national origin and retaliation.  (Exh. C, Parker MCHR documents; SAC at ¶ 36)  On November 7, 2017, the MCHR issued Parker a Notice of Right to Sue against Vandalia.  (Exh. C; SAC at ¶ 37)

On February 6, 2018, Jones filed a Charge of Discrimination against the Vandalia with the MCHR, alleging claims of retaliation for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964.  (Exh. D, Jones MCHR documents)  On August 8, 2018, the MCHR issued Jones a Notice of Right to Sue letter against Vandalia.  (Id.)

Waggoner is not a named party to either Plaintiffs' MCHR claims, and the MCHR did not issue a Right to Sue letter against Waggoner.  (Exhs. C and D)

## II.   <u>Motion for Summary Judgment and Responsive Briefs Thereto</u>

In his motion for summary judgment (ECF No.69), Waggoner contends that the material facts establish:  (1) Parker's failure to name him in his MCHR charges means that Parker failed to exhaust his administrative remedies against him and Count III must be dismissed;[8] (2) Count IV fails to assert a viable claim against him because the alleged wrongful conduct supporting this claim occurred after he was terminated; and (3) Count VI fails to state a defamation claim against him.

In response, Plaintiffs contend that Missouri takes a liberal approach to fulfilling the MHRA's procedural requirements and, although not named as a respondent, Waggoner was not only identified by name but also by conduct and actions attributable to him were set forth in the charge's particulars section.  (ECF No. 84)  Plaintiffs argue that Waggoner's statements in newspapers, especially his statement regarding officers who issued tickets to him to make their dismissals look suspicious because the officers were aware they were going to be terminated, violated their liberty interests.  Finally, Plaintiffs claim they were defamed by Waggoner's comments published in newspaper articles and made during closed sessions of Board of Alderman meetings.

In Reply (ECF No. 94), Waggoner persists that Parker's failure to name him as a respondent in his administrative proceedings forecloses any civil action against him under the MHRA.  Waggoner argues that the alleged defamatory statements are not actionable under § 1983.

---

[8] In his motion for summary judgment, Waggoner includes Jones in Count III.  A review of Count III shows that only Parker and Bumbales were named plaintiffs in that count, not Jones.

Finally, Waggoner contends that Plaintiffs failed to meet their burden of identifying a specific published statement by him that is capable of being reasonably construed as defamatory by failing to allege any defamatory statement made by him in the SAC.

## III.    **Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that a court may grant summary judgment if all of the information before the court shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. See Celotex Corp. V. Catrett, 477 U.S. 317, 322 (1986). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] ... which it believes demonstrate the absence of a genuine issue of material fact." Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). A party asserting that a fact cannot be genuinely disputed must support the assertion by "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In response, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," and must come forward with "specific facts showing that there is genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In order to survive a motion for summary judgment, "the nonmoving party must substantiate his allegations with sufficient probative evidence [that] would

permit a finding in his favor based on more than mere speculation, conjecture, or fantasy."
Barber v. C1Truck Driver Training, LLC, 656 F.3d 782, 801 (8th Cir. 2011). Therefore, "if a
nonmoving party who has the burden of persuasion at trial does not  present sufficient evidence as
to any element of the cause of action, then summary judgment is appropriate. "  Anderson, 477 U.S.
at 256.

In considering motions for summary judgment, courts view the facts in the light most
favorable to the nonmoving party.  Torgerson, 643 F.3d at 1042 (quotations and internal citations
omitted).  But that requirement applies "only if there is a genuine dispute as to those facts."  Id.
"A mere scintilla of evidence is insufficient to defeat summary judgment and if a nonmoving party
who has the burden of persuasion at trial does not present sufficient evidence as to any element of
the cause of action, then summary judgment is appropriate."  Pederson v. Bio-Medical App. of
Minn. 775 F.3d 1049, 1053 (8th Cir. 2015) (quoting Brunsting v. Lutsen Mountains Corp., 601
F.3d 813, 820 (8th Cir. 2010)).  Further, if the nonmoving party has  failed to "make a showing
sufficient to establish the existence of an element essential to that  party's case, ... there can be 'no
genuine issue as to any material fact,' since a complete failure of  proof concerning an essential
element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex,
477 U.S. at 322-23.

**IV.**     **Discussion**

**A.  The MHRA Claims (Count III)**

Before filing their lawsuit, Plaintiffs filed separate administrative charges with the
MCHR.  The charges named Defendant Vandalia as the sole respondent.

On March 20, 2017, Parker filed a Charge of Discrimination against Defendant
Vandalia with the MCHR, alleging claims of racial discrimination related to his national

origin and retaliation.  (SAC at ¶ 36; Exh. C, Parker MCHR documents)  Although Parker never named Waggoner as a respondent, nor followed the MHRA's procedures for joining Waggoner as a respondent, he alleges in the charge's particulars section of the MCHR charge as follows:

> On 12/14/2017, I told by Officer William Parker that Chase Waggoner,[9] City Administrator, made racially charged statements against Polish Officers.  On 12/15/2016, a meeting occurred between Officer Parker, Mr. Waggoner, and Ralph Kuda, Mayor.  Mr. Waggoner admitted to making the derogatory (*sic*) statements about Polish people and said he was joking.  He was issued a reprimand.  Since the reprimand, Mr. Waggoner has changed my hours to less desirable hours, denied me a pay raise and discharged me without reason.

(Exh. C at 6)  On November 7, 2017, the MCHR issued Parker a Notice of Right to Sue against Vandalia.  (SAC at ¶ 37; Exh. C)  Waggoner is not a named party to Parker's MCHR claims, and the MCHR did not issue a Right to Sue letter against Waggoner.  (Exh. C)

 As a general rule, a plaintiff cannot sue a defendant under the MHRA without first exhausting his administrative remedies by filing a discrimination charge with the MCHR against that defendant.  Mo. Rev. Stat. § 213.075(1).  This charge must be filed within 180 days of the allegedly discriminatory act and must state "the name and address of the person alleged to have committed the unlawful discriminatory practice."  Id.  Failure to name an individual in an administrative charge may preclude bringing a subsequent civil action against that person.  Hill v. Ford Motor Co., 277 S.W.3d 659, 669-70 (Mo. 2009).  However, if permitting suit would not frustrate the purposes behind exhaustion, then the failure to name an individual in the

---

[9] The mere fact that Parker mentioned in the narrative portion of their Charge that Waggoner was the city administrator and changed his work hours, denied him pay raises, and discharged him is insufficient to satisfy the MHRA's exhaustion requirement as to claims against Waggoner.  See Jackson v. Mills Props., 2011 WL 3607920, at *2 (E.D. Mo. Aug. 12, 2011) (applying the Hill factors and dismissing claims against individual defendants not named as respondents despite the fact that the plaintiff had mentioned them in the substantive portion of the EEOC charge.).

administrative charge does not require dismissal.  Id. at 669.  Further, a "claimant must exhaust administrative remedies by timely filing an administrative complaint and either adjudicating the claim through the MCHR or obtaining a right-to-sue-letter."  Hogan v. Cosmic Concepts, 2011 WL 4528470, *2 (E.D. Mo. Sept. 29, 2011).

Likewise, it is well-settled that the issuance of a notice of right-to-sue letter by the MCHR is a prerequisite to brining a lawsuit under the MHRA.  See Public Sch. Ret. Sys. Of Sch. Dist. Of Kansas City v. Mo. Comm's on Human Rights, 188 S.W.3d 35 (Mo. Ct. App. 2006).  The MHRA expressly provides that the MCHR must issue a notice of right-to-sue letter to the complainant "indicating his or her right to bring a civil action within ninety days of such notice against the respondent named in the [administrative] complaint"  Mo. Rev. Stat. § 213.111(1).  The term "respondent" is defined as "a person who is alleged to have engaged in a prohibited discriminatory practice in a complaint filed with the commission."  Mo. Rev. Stat. § 213.010(18); see also 8 C.S.R. § 60-2.015(1)(L) ("The term respondent shall mean a person against whom a complaint has been filed in accordance with the Act and these rules.").  The MHRA provides a procedure for joining additional respondents during the course of the investigation.  Mo. Rev. Stat. § 213.075.4; 8 C.S.R. §60-2.025(5) ("the complainant shall have the power … to amend the complaint … These amendments may join a person who was not named respondent in the original complaint as an additional or substitute respondent").

Missouri law is forgiving when determining whether the MHRA's procedural requirements have been met and is lenient in enforcing this prefiling requirement.  See Alhalabi v. Mo. Dep't. of Nat. Res., 300 S.W.3d 518, 525 (Mo. Ct. App. 2009) ("The Missouri Supreme Court has indicated that it takes a liberal approach to fulfillment of procedural requirements under the MHRA.").  The Supreme Court has held that "the importance of maintaining the availability of

complete redress of legitimate grievances without undue encumbrance" outweighs the interests served by the statute's procedural requirements, "especially [where] demanding full and technical compliance" would not advance the underlying purposes of the procedural requirements.  <u>Hill</u>, 277 S.W.3d at 670.  These purposes include giving notice to the charged party and providing an avenue for voluntary compliance without resort to litigation.  <u>Id.</u> at 659.  If allowing the lawsuit is not inconsistent with these purposes, then the Court may overlook a plaintiff's failure to join the individual in the initial charge.  <u>Id.</u>

There is no dispute here that Parker failed to name Waggoner in the MCHR charge; the question is whether this failure bars his MRHA claims against Waggoner.

A court considers the following factors, referred to as the <u>Hill</u> factors, in deciding whether the failure to name an individual in an administrative charge bars a subsequent MHRA claim against that individual:

1. Whether the complainant could have ascertained the role of the unnamed party through reasonable efforts at the time of the filing of the charge;

2. Whether the interest of the unnamed party and the respondents are so similar that, for the purpose of obtaining voluntary reconciliation and compliance, including the unnamed party was unnecessary;

3. Whether the failure to include the unnamed party in the charge resulted in actual prejudice; and

4. Whether the unnamed party had somehow represented to the complainant that its relationship is to be through the named party.

<u>Id.</u> at 669-70.  In applying <u>Hill</u>, federal courts have forgiven a plaintiff's failure to name an individual defendant in an administrative charge, but the result is determined by the facts of each case.

With respect to the first factor, the Court finds Parker had actual knowledge of Waggoner's role in this matter before filing his administrative charge and at the time he filed his charge of

discrimination.  In fact, most of his assertions in the administrative charges track those made in the SAC; these assertions are not the sort of facts that emerge years later during discovery.  The Court finds Parker was aware of Waggoner's role when he filed his charge and should have named him as a respondent, but he did not.  See Gates v. City of Lebanon, 585 F.Supp.2d 1096, 1100 (W.D. Mo. 2008) (the court dismissed the claims against the individual defendants because, although they were identified in the body of the charge, they were not named as respondents); see also Borders v. Trinity Marine, Prod., Inc., 2010 WL 5139343, at *2 (E.D. Mo. Dec. 9, 2010) ("To accept Plaintiff's assertion on its face would mean to allow Plaintiff to include every individual named in his MCHR Memorandum as defendants without following the requirements of § 213.075.").  Thus, the first factor weighs in favor of Waggoner.

Turning to the second factor, the Court finds the interests of Waggoner and Vandalia were not so similar that it was unnecessary to include him in the MCHR proceedings.  "An employer-employee relationship, standing alone, cannot create such similarity of interests."  Perkins v. Davis, 2015 WL 357501, at *1 (E.D. Mo. June 5, 2015) ("Because there is no other indication in the pleadings that [the individual defendant's] interests are similar to [the employer's], this factor weighs in favor of dismissal.").  Moreover, at the time Parker filed his charge, Waggoner was no longer employed as Vandalia's administrator.  Vandalia terminated Waggoner on March 1, 2017.  Waggoner and Vandalia have never shared the same counsel in this case.  Any voluntary conciliation or compliance agreed to in the administrative proceedings by Vandalia would have had no binding effect on Waggoner, and any finding that Waggoner engaged in unlawful conduct would not have impacted Vandalia.  Hence, Waggoner and Vandalia's interests were not sufficiently similar that it was unnecessary to include Waggoner in the MCHR proceedings.  Further, Parker's failure to name Waggoner as a respondent in his administrative charge

undermined the primary purpose of the exhaustion requirement: to provide a mechanism for resolution without litigation.  Hill, 277 S.W.3d at 669.  This factor weighs in favor of Waggoner.

With respect to the third factor, it is unclear whether Parker's failure to name Waggoner as an individual respondent has prejudiced either party because the pleadings in this case do not reveal whether conciliation was in fact attempted by the MCHR.  Thus, it is unclear whether Waggoner was prejudiced regarding conciliation, and this factor weighs in neither party's favor.  See Thomas v. Nash, 2015 WL 1222396, at *4 (E.D. Mo. Mar. 17, 2015) (finding this factor weighed in neither party's favor where there was no indication of whether conciliation with the named respondent was ever attempted or offered).  Nonetheless, Waggoner was deprived of the opportunity to have counsel to represent his individual interests, to submit documents and to respond to Parker's charges, or to tender any defense at the administrative process, so this factor weighs in favor of Waggoner.

With respect to the fourth factor, nothing in the record suggests that Waggoner indicated to Parker that he wanted Vandalia to represent him before the MCHR, a factor which weighs against Parker.  To prevail on the fourth factor, Parker must show that Waggoner held himself out as the "virtual alter ego" of Vandalia.  Herring v. Yanfeng USA Auto. Trim Sys., Inc., 2019 WL 2270605, at *3 (W.D. Mo. May 28, 2019); Borders v. Trinity Marine Prods., Inc., 2010 WL 5139343, at *3 (E.D. Mo. Dec. 9, 2010).  Although Parker understood Waggoner to be the former city administrator, there is no evidence that Waggoner ever affirmatively represented to Parker that he and Vandalia were one and the same.  Absent such factual allegations, this factor favors Waggoner.

The Hill factors weigh against granting Parker an exception to the general rule.  By not naming Waggoner in his charge of discrimination, Parker failed to exhaust his administrative

remedies against Waggoner.  Accordingly, Waggoner is entitled to summary judgment on Count III.

**B.  <u>Section 1983 Claims (Count IV)</u>**

In Count IV, Plaintiffs assert that they have a liberty interest in protecting their good names. Plaintiffs allege that they were denied procedural due process as a result of how the hearing to review their terminations was conducted and the publication of stigmatizing information about their terminations.[10]

In the SAC, Plaintiffs allege that, on January 16, 2017, Waggoner and Hammann terminated them but on January 23, 2017, the Vandalia's Board of Alderman rescinded their terminations and placed them on paid administrative leave pending an investigation.  Vandalia removed Waggoner from his position as city administrator on March 1, 2017.  On April 12, 2017, at the conclusion of the second investigation, Vandalia, through its Board of Alderman, terminated Plaintiffs.  Plaintiffs requested a hearing to review their terminations, and during the hearing on June 20, 2017, the City informed Plaintiffs that the grounds for their terminations consisted of allegations of falsified timecards and conduct detrimental to the police department.

Title 42 of the United States Code, § 1983 allows an individual to bring suit against persons who, under color of state law, have caused him to be "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  In order to state a claim pursuant to § 1983, a plaintiff must allege two essential elements:  (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under the color of state law.  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).

---

[10] The publication of alleged stigmatizing information about Plaintiffs' termination is further discussed during the analysis of their defamation claim.

If a defendant is being sued for acts or omissions that occurred while he was acting as an employee of a state or local government, then that defendant is presumed to be a state actor for § 1983 purposes.  Id. at 49 (stating that  "state employment is generally sufficient to render the defendant a state actor").

"An employee's liberty interests are implicated where the employer levels accusations at the employee that are so damaging as to make it difficult or impossible for the employee to escape the stigma of those charges."  Winegar v. Des Moines Indep. Cmty. Sch. Dist.,  20 F.3d 895, 899 (8th Cir. 1994).   Reputational harm coupled with "some more tangible interests such as employment," can together be "sufficient to invoke the procedural protection of the Due Process Clause."  Id. at 701.  See, e.g., Owen v. City of Independence, Mo., 560 F.2d 925, 935 (8th Cir. 1977) ("In determining whether a government employer has deprived its employee of a liberty interest in the termination of employment, the crucial issue is whether the government employer, in connection with the termination,  of the government employment, …, makes a charge which might seriously damage the employee's standing and reputation in the community."), vacated and remanded on other grounds, 438 U.S. 902 (1978).  This stigma must be established where the employee is accused of actions involving "dishonesty, immorality, criminality, racism, or the like." Winegar, 20 F.3d at 899.

"For a defamatory statement to be actionable under § 1983, it must go beyond alleging conduct by the plaintiff that fails to meet professional standards, and instead must damage [] a person's standing in the community or foreclose[] a person's freedom to take advantage of other employment opportunities."  Crews v. Monarch Fire Prot. Dist., 771 F.3d 1085, 1092 (E.D. Mo. 2014) (internal quotations omitted).  "The stigma must be significant, and it usually involves

allegations of dishonesty, immorality, criminality, or racism." Howard v. Columbia Pub. Sch. Dist., 363 F.3d 797, 802 (8th Cir. 2004).

Plaintiffs have failed to plead a set of facts showing how and why Waggoner was acting under color of state law and should be treated as a state actor for § 1983 purposes. See Reasonover v. St. Louis Cty., Mo., 447 F.3d 569, 584 ("A private party may be deemed a state actor for purposes of section 1983 liability when he acts under cover of state law and performs a function 'traditionally, exclusively reserved to the state.'") (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 352 (1974)).

Here, Waggoner and Hammann terminated Plaintiffs on January 16, 2017 but on January 23, 2017, the Board of Alderman voted to rescind Plaintiffs' terminations and placed Plaintiffs on administrative suspension pending an investigation. Vandalia terminated Plaintiffs' employment on April 12, 2017, a month after Vandalia terminated Waggoner's employment so at the time of their termination, Waggoner was no longer an employee of Vandalia so he is not presumed to be a state actor. Likewise, since Waggoner was no longer employed by Vandalia, he would not have participated in the hearing to review their terminations.

Assuming for the sake of argument that Waggoner is a state actor, neither one of the two newspaper articles contain a defamatory statement made by Waggoner that resulted in stigma to Plaintiffs, and Waggoner could not have made such statements during the course of their termination since both articles were published after Waggoner had been removed from his position as city administrator. Paul v. Allen, 424 U.S. 693, 705, 710 (1976) (the stigmatizing allegations must be made in the course or in connection with the employee's discharge). Waggoner did not accuse either Plaintiff by name "of dishonesty, immorality, criminality, racism, or the like." Winegar, 20 F.3d at 899. As to Waggoner's statements being defamatory, Plaintiffs have not

established their standing in the community has been compromised, or they have been foreclosed of other employment opportunities.  Accordingly, Waggoner is entitled to summary judgment on Plaintiffs' § 1983 claim.

### C. Defamation Claims (Count VI)[11]

In Count VI, Plaintiffs assert Missouri state law defamation claims, alleging that Waggoner made defamatory statements about them at closed sessions of Vandalia's Board of Alderman meetings and in two newspaper articles.

Under Missouri law, the elements of defamation are (1) publication (2) of a defamatory statement (3) that identifies the plaintiff (4) that is false (5) that is published with the requisite degree of fault, and (6) that damages the plaintiff's reputation.  Overcast v. Billings Mut. Ins., 11 S.W.3d 62, 70 (Mo. 2000).

Under Missouri law, "proof of actual reputational harm is an absolute perquisite in a defamation action."  Keeney v. Wal-Mart Stores, Inc., 100 S.W.3d 809, 817 (Mo. banc 2003).

---

[11] The sole basis for the Court's jurisdiction over Plaintiffs' remaining state-law claims is 28 U.S.C. § 1367(a), which permits a district court to exercise supplemental jurisdiction over claims that are a part of the same controversy as the claims that fall within the district court's original jurisdiction.  Under 28 U.S.C. § 1367(c)(3), the Court may, in its discretion, decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims  over which it has original jurisdiction. "  See Zutz v. Nelson, 660 F.3d 346, 359 (8th Cir. 2011).  In determining whether to exercise supplemental jurisdiction, the Court considers judicial efficiency, convenience, and fairness to litigators.  See Candor Corp. v. City of St. Paul, 912 F.2d 215, 221 (8th Cir. 1990).  "[W]hen federal claims are dismissed before trial, the normal practice is to dismiss pendent  [state law] claims."  Stokes v. Lokken, 644 F.2d 779, 785 (8th Cir. 1981), overruled on other grounds by Pinter v. Dahl, 486 U.S. 622, (1988); ACLU v. City of Florissant, 186 F.3d 1095, 1098-99 (8th Cir. 1999) (state law claims are typically "dismissed without prejudice to avoid needless decisions of state law … as a matter of comity.") (internal quotation omitted).  Courts should "exercise judicial restraint and avoid state law issues wherever possible" Thomas v. Dickel, 213 F.3d 1023, 1026 (8th Cir. 2000) (internal quotations omitted), and the relevant factors typically point toward declining to exercise supplemental jurisdiction.  Carnegie-Mellon Univ. v. Cahill, 484 U.S. 343, 350 n.7 (1988).  As a result, this Court could have declined  to exercise supplemental jurisdiction over this state law claim.

Emotional distress or embarrassment alone is insufficient to support a defamation claim.  Id.  "To demonstrate actual damages, plaintiffs must show that defamatory statements caused a quantifiable professional or personal injury, such as interference with job performance, psychological or emotional distress, or depression."  Arthaud v. Mut. Of Omaha Ins. Co., 170 F.3d 860, 862 (8th Cir. 1999).  "[T]he questions of whether a plaintiff's damages were caused by the defamatory statement is for the jury to decide," unless a court can determine that a plaintiff failed to meet his burden of production.  Topper v. Midwest Div., Inc., 306 S.W.3d 117, 130 (Mo. Ct. App.  2010); see Nazeri v. Missouri Valley College, 860 S.W.2d 303, 314 (Mo. banc 1993); Washington by Washington v. Barnes Hosp., 897 S.W.2d 611, 615 (Mo. banc 1995) (a case should not be submitted to the jury "unless each and every fact essential to liability is predicated upon legal and substantial evidence.") (internal quotations and citation omitted).

### 1.   Closed Sessions of Vandalia's Board of Alderman Meetings

Plaintiffs contend that statements Waggoner allegedly made during the closed sessions of the City's Board of Alderman meetings in part form the basis for their defamation claim.  See Responses to Waggoner's First Interrogatories ("It is believed that defamatory statements were made to Police Chief Chris Hammond (sic), Mayor Ralph Kuda, Vandalia City Attorney, and Vandalia City Alderman.  These were made in closed sessions of city council meetings."  (ECF Nos. 71-5 and 6))

Missouri has applied intra-corporate immunity to defamation claims regarding certain business communications.  Blake v. May Dep't Stores Co., 882 S.W.2d 688, 690 (Mo. Ct. App. 1994).  "[I]n the context of a business, repetition of a defamatory statement will not constitute publication when the business is merely communicating with itself."  Lovelace v. Van Tine, 545 S.W.3d 381, 383 (Mo. Ct. App. 2018) (communications among officers and supervisory

employees are not publications for defamation purposes).  Specifically, the rule applies to "communications between officers of the same corporation and in the due and regular course of the corporate business, or between different offices of the same corporation[.]"  Hellesen v. Knaus Truck Lines, Inc., 370 S.W. 2d 341, 344 (Mo. 1963)).  "[W]hat matters most for the application of intra-corporate immunity is 'the role of the person *receiving* the statement, rather than the person making the statement,' because '[e]mployees must be able to bring personnel matters to the attention of supervisors without risk of liability.'"  Lovelace, 545 S.W.3d at 384 (emphasis in original).  Waggoner would qualify as an officer for purposes of Missouri's intra-corporate immunity doctrine until his termination on March 1, 2017.  As city administrator, Waggoner had "general superintending control of the administration and management of the government business, officers and employees of the city, subject to the direction and supervision of the mayor." Mo. Rev. Stat. § 79.240.

Applying the foregoing to the statements at issue here and assuming that each of these statements were capable of defamatory meaning; that is, capable of a meaning that "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from association or dealing with him," there has been no publication.  Henry, 690 S.W.2d at 779.  Words that impute "fraud, want of integrity, or misconduct in the line of one's calling" are capable of such a meaning.  Nazeri, 860 S.W.2d at 311.  Here, assuming Waggoner's statements were capable of defamatory meaning, the statements he allegedly made were during closed sessions of Vandalia's Board of Alderman meetings in the ordinary course of business and fall within the intra-corporate immunity rule.  The communications do not constitute publication of a defamatory matter because they were part of the business of a municipal corporation communicating with itself.  Because Waggoner's statements were allegedly made during closed

Board of Alderman sessions with Kuda, Hammann, and Board of Alderman members present, Waggoner is entitled to judgment because Plaintiffs cannot show publication, a necessary element of a defamation claim. Moreover, Plaintiffs do not challenge Waggoner's contention that his statements were not repeated to anyone outside of the Board of Alderman meetings.

### 2.  <u>Newspaper Articles</u>[12]

#### a.  **Hannibal Courier-Post**[13]

An April 2, 2017, Hannibal Courier-Post newspaper article included statements attributable to Waggoner. (ECF No. 94-2) The April 2, 2017, newspaper article discussed how Hammann claimed retaliation after Bumbales, a former part-time Vandalia policeman and current volunteer Farber Police Department police chief, issued a pair of traffic citations, one for going two miles over the speed limit and the other for failing to produce proof of insurance. <u>Id.</u> The article also discussed how Waggoner was issued citations[14] related to an unregistered motor home parked on

---

[12] In the articles, there is no reference to Parker or Jones by name, only Bumbales is identified by name. Although it is it not necessary that defamatory statements refer specifically to the plaintiffs by name, it must be shown that the reader reasonably understood the defamatory words to have been directed to Plaintiffs. <u>May v. Greater Kansas City Dental Soc.</u>, 863 S.W.2d 941, 945 (Mo. Ct. App. 1993). The undersigned must determine whether a person reading the article would reasonably understand the allegedly offending words refer to Plaintiffs. <u>Id.</u> For purposes of this motion, the Court assumes that a reader would understand the words refer to Plaintiffs.

[13] Likewise, as noted by Waggoner, Plaintiffs failed to reference this article in their responses to his interrogatories so this serves as a basis for the Court to refuse to consider this article (ECF Nos. 71-5 and 6), and in their SAC, Plaintiffs failed to allege that the article contained any defamatory statements Waggoner made about them.

[14] In the SAC, Plaintiffs allege that Parker issued Hammann a citation for failing to register his motor vehicle (ECF No. 94). And in January 2017, Bumbales placed an 48-hour warning on an improperly parked recreational vehicle, indicating that the owner had 48 hours to move the vehicle or be ticketed. (<u>Id.</u> at ¶ 96) "The recreational vehicle actually belonged to Defendant Waggoner." (<u>Id.</u> at ¶ 97) After Waggoner failed to move the recreational vehicle within the 48-hour time period, Bumbales attempted to have the vehicle towed but the tow truck driver could not obtain the keys to move the recreational vehicle. (<u>Id.</u> at ¶¶ 98-100) Bumbales then issued Waggoner a citation for the improperly parked and inoperable recreational vehicle. (<u>Id.</u> at ¶ 104)

his property, and how he and Hammann felt "targeted for retaliation because of the police department staffing positions."  Id.  The article quoted Waggoner as saying, "[t]hey were clearly upset" when he and Hammann decided to fire three part-time police officers.  Id.  The article also referenced that Waggoner was fired by Vandalia's Board of Alderman.

### b.  The Vandalia Leader

On March 15, 2017, The Vandalia Leader article recapped an article published in The Lebanon Daily Record and enabled Waggoner to discuss his side of the story regarding his removal as Vandalia's City Administrator (ECF No. 85-8).  The article quoted Waggoner as saying "[Vandalia] was far and away the most dysfunctional place I have ever worked…. and [the mayor and Board of Alderman] wanted to bring in somebody who they could kind of push around and who was going to be a scapegoat if something ended up going wrong." (ECF No. 85-8) The article discussed  Waggoner's "situation involving part-time officers."  (Id.)  In relevant part, the article reported  that "[Waggoner] claimed the officers knew they were going to be fired to make room for full-time officers so he says they allegedly began writing tickets to him and the incoming police chief in order to make their dismissal look suspicious."  (Id.)  The article further reported that "[Waggoner] was also in the spotlight in January when he received a pair of traffic citations. Within that same two-week period, officers involved in those citations were also let go on the first day the new Police Chief was serving full time.  Many residents expressed their frustration with the decision on Social Media before the three let-go officers were put on paid administrative leave pending an  investigation."  (Id,)

A review of the articles shows that Waggoner did not accuse Plaintiffs of dishonesty, immorality, criminality, racism, or any other matters such as failing to meet professional standards

that could be considered defamatory under Missouri law.[15]   The Court finds the defamatory meaning attributable to Waggoner cannot be found of the face of these articles.  No can defamatory meaning be drawn from Waggoner's statements by implication.  Plaintiffs have failed to meet their burden of identifying a specific published statement by Waggoner that is capable of being reasonably construed as defamatory.

Further, to successfully maintain an action for defamation under Missouri law, Plaintiffs must allege and prove some reputational harm.  Kenney v. Wal-Mart Stores, Inc., 100 S.W.3d 809, 813-14 (Mo. 2003) ("proof of actual reputational harm is an absolute prerequisite in a defamation action.").  Assuming without deciding that Plaintiffs have sufficiently pled the other elements of their defamation claim, the Court focuses on the final element, whether Waggoner's statements in the newspaper articles caused damage to their reputation.

The Court finds that Waggoner is entitled to summary judgment because Plaintiffs failed to present any evidence that his statements in the newspaper article caused them reputational damage.  "Proof of actual reputational harm is an absolute prerequisite in a defamation action." Cockram v. Genesco, Inc., 680 F.3d 1046, 1053-54 (8th Cir. 2012); Kenney, 100 S.W.3d at 817. "To demonstrate actual damages [in Missouri], plaintiffs must show that defamatory statements caused a quantifiable professional or personal injury, such as interference with job performance, psychological or emotional distress, or depression." Cockram, 680 F.3d at 1054.

---

[15] Even giving Plaintiffs every benefit of the doubt, Waggoner is not quoted as saying that the officers wrote false or invalid tickets.  Rather, that the tickets may have been written with an ulterior motive in mind --- to make any subsequent termination look suspicious.

In their SAC,[16] Plaintiffs allege that, as a result of Waggoner's false and defamatory statements, they have suffered irreparable injury, pain and suffering, personal and physical injuries, loss of peace of mind, loss of wages, loss of benefits, loss of opportunity, and damages from garden-variety emotional distress." (ECF No. 41 at ¶ 163)  "To demonstrate actual damages, plaintiffs must show that defamatory statements caused a quantifiable professional or personal injury, such as interference with job performance, psychological or emotional distress, or depression." Arthaud, 170 F.3d at 862.  Plaintiffs have not supported these allegations by showing anyone told them they had lost trust or confidence in their abilities or that they sought medical treatment or psychiatric or psychological counseling.  Taylor v. Chapman, 927 S.W.2d 542, 544 (Mo. Ct. App. 1996).  Plaintiffs' allege, without any evidentiary support, that their reputation and pecuniary interests were damaged as a result of Waggoner's statements but these allegations do not demonstrate actual damages showing that the defamatory statements caused a quantifiable professional or personal injury, such as interference with job performance, psychological or emotional distress, or depression.   The damages alleged by Plaintiffs are nothing more than conclusory statements without any factual support.  See Weidner v. Anderson,  174 S.W.3d 672, 684 (Mo. Ct. App. 2005) (requiring concrete proof that a person's reputation has been injured);

---

[16] Under Missouri law, a plaintiff must set forth specifically in his complaint the words and/or statements which are alleged to be inflammatory.  See Nazeri. 860 S.W.3d at 313.  Waggoner moves for judgment as a matter of law on Count VI, arguing that Plaintiffs fail to state a claim for defamation under Missouri law because the two newspaper articles upon which they rely do not allude to any defamatory statements Waggoner made about Plaintiffs.  The SAC fails to set forth Waggoner's allegedly defamatory statements.  See Missouri Church of Scientology v. Adams, 543 S.W.2d 776 (Mo. banc. 1953) (Missouri law requires "a plaintiff complaining of defamation must specifically set forth in the complaint the words which are alleged to be defamatory").  Waggoner contends that the statements fail to state a claim for defamation because the statements identified in the newspaper articles are not defamatory because the SAC contains no allegations directed to Waggoner were made about Plaintiffs.  As a result, the Court holds that Waggoner's statements alleged in Count VI are not defamatory as a matter of law.

see also King v. Union Station Holdings, LLC, 2012 WL 5351598, at *5 (E.D. Mo. Oct. 30, 2012) (dismissing defamation claim under Missouri law, for among other things, insufficient allegations regarding damages).   Accordingly, Waggoner is entitled to summary judgment on Plaintiffs' defamation claim.

**V.**      **Conclusion**

Based on the foregoing analysis, the record clearly establishes that there are no genuine disputes as to any material facts.   Accordingly,

**IT IS HEREBY ORDERED** that Defendant Chase Waggoner's Motion for Summary Judgment (ECF No. 69) is GRANTED.

A separate Judgment in accordance with this Memorandum and Order is entered herewith. Dated this 18th day of March, 2021.

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE